UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**REGINALD BUTLER,**
   **Plaintiff,**

   vs.          07-1201

**ROGER WALKER, et al.,**
   **Defendants.**

### MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

  Before the court are the defendants, Rosenberg, Gilbert, Smithson, Jackie Miller, Sherry Benton, Roger Walker, Eddie Jones, Anabelle Motteler and D Lingle's summary judgment motion [31], the plaintiff's response [39] and the defendants' reply [40].

Background

  In the court's September 5, 2007 merit review order, the court found that the plaintiff's claim regarding a July 11, 2006-incident (altercation with another inmate) at Centralia was barred by *Heck v. Humphrey*. The plaintiff lost good time as part of that punishment, so his procedural due process challenges under 42 U.S.C. § 1983 are not cognizable, as dictated by a line of Supreme Court cases starting with *Heck v. Humphrey*, 512 U.S. 477, 484-487 (1994). The defendants, Ainslie, Combs, Clontz, Hawes, Sink and Lambert were terminated. The court allowed the plaintiff to proceed only on his claim of excessive force. The remaining defendants are Roger Walker, Director of IDOC , Eddie Jones, CAO Pontiac Prison, Anabelle Motteler,  D Lingle, Adjustment Committee Chairperson. Rosenberg, Correctional Officer, Gilbert, Correctional Officer, Smithson, Correctional Officer, Jackie Miller, member of the Administrative Review Board Chairperson-Officer of Inmate Issues, and Sherry Benton, member of the Administrative Review Board.

Undisputed Material Facts[1]

1.  At all times relevant to the complaint, the plaintiff was incarcerated at Pontiac Correctional Center. (Complaint [1].)
2.  At all times relevant to the complaint, the defendants were employed by the Illinois Department of Corrections and acted under color of state law. (Id.)
3.  On July 11, 2006, the plaintiff received three disciplinary reports for assault, fighting and causing a dangerous disturbance at Central Correctional Center. (Affidavit of Sherry Benton, para. 10(a), Ex. Ex. B.)
4.  The plaintiff was immediately transferred to Pontiac. (Complaint [1].)

---

[1]The only facts taken from the parties' undisputed facts are those that are material to the remaining claim.  Further, the exhibits can be found attached to the defendants' memorandum of law [32], except where otherwise noted.

1

5. The plaintiff alleges that upon his arrival at Pontiac, he was assaulted by the defendants, Smithson, Rosenberger and Gilbert. (Id.)
6. Pontiac's Adjustment Committee held a hearing on all three tickets and found him guilty on July 17, 2006. The defendants, Lingle and Motteler were members of the Adjustment Committee. (Ex. B, para. 10(a).)
7. The defendant, Jones concurred in the finding on July 25, 2006. (Ex. B, para. 10(a).)
8. The plaintiff appealed his guilty finding to the Director's Office. (Ex. B, para 10(a).)
9. On August 28, 2006, the ARB received from the plaintiff a grievance dated July 27, 2006, complaining about the disciplinary process associated with his guilty finding. Although the plaintiff mentions in four lines of that grievance that an officer cut him and almost broke his wrist, he does not identify the officer or provide any identifying information.[2] (Ex. B, para. 10(b); Ex. B1, page 14.)
10. This grievance was not signed by the plaintiff's counselor and it was not accompanied by responses by the grievance officer and chief administrative officer. (Ex. B, para. 10(b); Ex. B1, page 13.)
11. On September 5, 2006, the ARB received from the plaintiff two emergency grievances complaining about the disciplinary process associated with his ticket for fighting, assault and creating a dangerous disturbance. In those grievances, the plaintiff mentions that he was "cut by the officer my finger was pull out of place and the handcuff put on purpose tite (sic)." However, the plaintiff did not identify the officer or provide any identifying information. The other grievance mentions nothing about any assault at Pontiac. (Ex. B, para. 10(b); Ex. B1, pages 15-18.)
12. Neither of these two grievances was determined by the warden's office to constitute an emergency, and both were returned to the plaintiff with instructions to follow the normal grievance procedure. (Ex. B, para. 10(b); Ex. B1, pages 15-18.)
13. On October 12, 2006, the defendant Miller held a hearing regarding the plaintiff's appeal of his convictions for fighting, assault and creating a dangerous disturbance. These three grievances were among the documents considered by the defendant Miller when she denied the plaintiff's appeal of his conviction. (Ex. B, para. 10(c).)
14. ARB Chairperson Terry Anderson, acting as Director Walker's designee, concurred in the decision a day later. (Ex. B, para. 10(d); Ex. B1, page 1.)
15. On December 4, 2006, the ARB received from the plaintiff three grievances complaining about the discipline he received for assault, fighting and causing a disturbance. In two of those grievances, both dated November 23, 2006, the plaintiff requests restoration of the good time that was revoked as a result of the July 11, 2006, discipline. A third grievance, dated November 8, 2006, complains that he was beaten up by the defendants, Rosenberg, Smithson and Gilbert. (Ex. B, para. 10(e); Ex. B2, pages 2-7.)
16. These three grievances were returned to the plaintiff with a memo stating that the issue had previously been addressed on October 12, 2006, and that the plaintiff had provided no justification for additional consideration. (Ex. B, para. 10(f); Ex. B2, page 1.)
17. The plaintiff has no allegations against any of these defendants (with the exception of Rosenberg, Smithson and Gilbert), other than they were either involved in denying the

---

[2] The plaintiff disputes this fact and facts 11 and 12, but documents submitted by the defendants and pointed to by the plaintiff corroborate that this fact is true.

grievance he wrote that included his claim of being assaulted by staff or in finding him guilty of assaulting another inmate before he was transferred to Pontiac. (Ex. A, p. 53-6.)

Discussion and Conclusion of Law

The plaintiff has pending a complaint alleging that the defendants, Smithson, Rosenberger and Gilbert violated his Eighth Amendment right by using unconstitutional force against him upon his arrival at Pontiac Correctional Center on July 11, 2006. He also alleges that the defendants, Walker, Miller, Benton, Jones, Lingle and Motteler violated his Eighth Amendment right because they denied the grievance he filed after the incident. The defendants move for summary judgment on grounds that the plaintiff has failed to exhaust his administrative remedies against Smithson, Rosenberger and Gilbert; and that Walker, Miller, Benton, Jones, Lingle and Motteler were not personally involved in the alleged constitutional violation; and that the defendants are entitled to qualified immunity.

In his response [39] to the pending summary judgment motion [31], the plaintiff claims that the defendants, Eddie Jones, Sherry Benton, Jackie Miller and Roger Walker violated his due process rights by failing to address or investigate his emergency grievances "or otherwise claim of us affirmative misconduct" by the defendants, Smithson, Rosenberger and Gilbert, preventing the plaintiff from exhausting through the normal grievance procedures. The plaintiff also claims in his response that Walker caused the plaintiff's injuries "by breach of duty to train or supervise his subordinates who attacked and/or assaulted plaintiff." Walker, Miller, Benton, Jones, Lingle and Motteler were not involved in the alleged excessive force. The plaintiff alleges that after he was transferred to Pontiac on July 11, 2006, he was assaulted by three correctional officers in violation of his Eighth Amendment right. However, although he seeks to hold the defendants, Walker, Miller, Benton, Jones, Lingle and Motteler liable for that assault, none of these the defendants were alleged to have been personally involved in the assault. The plaintiff merely claims that these defendants are responsible because they denied the grievances he filed after the alleged assault by Smithson, Rosenberger and Gilbert. By the plaintiff's own admission, all of this happened after the alleged assault. Because the plaintiff concedes that these defendants were not personally involved in the alleged July 11, 2006, beating, his claim against them cannot proceed.

Further, there is no substantive constitutional right to a grievance procedure. *Grieveson v. Anderson,* 538 F.3d 763, 772 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)(state's grievance procedures do not give rise to liberty interest). Likewise, the plaintiff has no constitutional right to an investigation. He has a right to protection from assault. Here, there is no allegation that Walker, Miller, Benton, Jones, Lingle and Motteler were present at the assault, nor did they have advance notice of the assault. Finally, the plaintiff's allegation that Walker failed to train or supervise his subordinates was not raised in his complaint or during the merit review of his complaint. The plaintiff cannot assert new claims in a response to a dispositive motion. Pursuant to Fed. R. Civ. Pro. Rule 56(c), Walker, Miller, Benton, Jones, Lingle and Motteler are granted summary judgment.

Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act (PLRA") all prison inmates bringing an action under 42 U.S.C. 1983 with respect to prison conditions must first exhaust all administrative remedies that may be available to them before being allowed to proceed with

the lawsuit. 42 U.S.C. 1997e(e). Pursuit of administrative remedies is necessary no matter what relief the plaintiff seeks, including monetary damages. *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819 (2001). Section 1997e(e) makes exhaustion a precondition to filing suit. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). In order to fully exhaust administrative remedies, inmates are required to file a grievance regarding an issue at the institutional level, receive a response from the Chief Administrative Officer of the institution ("Warden"), and if the Warden denies the grievance, appeal the denial to the Administrative Review Board ("ARB") within 30 days. 20 Ill. Admin. Code 504.850. His grievance must be filed within 60 days of the incident, and it must contain factual details regarding each aspect of the inmate's complaint, including what happened, when, where and the name of each person who is the subject of the complaint. 20 Ill. Admin. Code 504.810(b). An inmate who does not know the individual's identity may still file a grievance, but he must include as much descriptive information about them as possible. *Id.*

In most circumstances, an inmate who wishes to file a grievance must first attempt to resolve his compliant informally with his counselor. *Id.* However, an inmate may request that his grievance be heard on an emergency basis. *Id.* He may do so by forwarding his grievance directly to the warden's office rather than the counselor or grievance officer. *Id.* Additionally, certain issues may be grieved directly to the ARB, rather than first through a counselor, grievance officer and warden. These issues include: (1) Decisions involving the involuntary administration of psychotropic medication; (2) decisions regarding protective custody placement, including continued placement in or release from protective custody; (3) decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and (4) other issues except personal property issues which pertain to a facility other than the facility where the inmate is currently assigned. 20 Ill. Admin. Code 504.870. All other issues must be submitted through the normal grievance procedure. Regardless, the inmate's administrative remedies are not exhausted until the merits of the appeal are ruled on by the Director through the Board. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Additionally, the Seventh Circuit has concluded that compliance with the PLRA's exhaustion mandate requires that the inmate follow all of these rules. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023, citing *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983(2002); *Booth v. Churner*, 121 S. Ct. 1819 (2001). In other words, an inmate cannot exhaust his administrative remedies by filing a late grievance or appeal or by skipping steps in the process. *Id.*

The plaintiff has failed to exhaust his administrative remedies against defendants, Smithson, Rosenberger and Gilbert before filing this lawsuit. The plaintiff alleges that Smithson, Rosenberger and Gilbert violated his Eighth Amendment right by beating him up upon his arrival at Pontiac on July 11, 2006. However, although the plaintiff mentioned in the three grievances he submitted to the ARB on August 28, 2006 and September 5, 2006, that he had been cut and his wrist injured by an officer at Pontiac, he does not say when this occurred and he provided neither the officer's identity nor any identifying information as required by the Department's rules. Certainly, the plaintiff knew what happened, when and where the assault occurred and that three officers were involved in the assault, rather than an officer. The issue of the plaintiff's alleged assault at Pontiac was not properly grieved in any of these grievances. Although the eight lines devoted to this issue were apparently overlooked in six pages of grievances about discipline (Undisputed Fact 9), it was not properly filed with the ARB. Most important is the fact that because the alleged assault occurred at Pontiac, where the plaintiff was housed when he filed the grievance, he had to file it there. The fact that the plaintiff initially filed two of these grievances as emergency, the grievances

at Pontiac indicate that the plaintiff apparently recognized this. (Undisputed Fact 11.) Further, although the plaintiff eventually included Rosenberger, Gilbert and Smithson in a grievance he filed with the ARB on December 4, 2006, this was beyond the 60-day deadline for the plaintiff to file a grievance against them for the alleged July 11, 2006 assault on the plaintiff. (Undisputed Fact 15.) In short, the plaintiff failed to exhaust his administrative remedies against Rosenberger, Smithson Gilbert because he failed to follow the Department's grievance rules and complete the grievance process regarding their alleged July 11, 2006, assault on the plaintiff. Consequently, pursuant to Fed. R. Civ. Pro. Rule 56(c), Rosenberger, Smithson and Gilbert are entitled to summary judgment in their favor.

**It is therefore ordered:**

1. **The defendants' motion for summary judgment[31] is granted pursuant to Fed. R. Civ. P. Rule 56(c). The clerk of the court is directed to enter judgment in this case in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. Rule 56(c). This lawsuit is terminated in its entirety.**
2. **If the plaintiff wishes to appeal this decision, he must file a notice of appeal with this court within 30 days of entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. § 1915(g).**

**Entered this 28th day of September 2009.**

                                            s\Harold A. Baker
                                  _____
                                            **Harold A. Baker**
                                    **United States District Judge**